KIMBERLY WRIGHT-GRAY,
individually and on behalf of all
others similarly situated,

    Plaintiff,

        v.

JULIE HAMOS, in her official capacity
as Director of the Illinois Department
of Healthcare and Family Services,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 09 C 04414

Judge Edmond E. Chang

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Wright-Gray, as a putative class representative, has sued

Julie Hamos,[1] in her official capacity as Director of the Illinois Department of

Healthcare and Family Services.[2] Wright-Gray seeks to enjoin the Department from

---

[1] Plaintiff originally named Barry S. Maram, who served as the Director of the Illinois Department of Healthcare and Family Services before Julie Hamos, as a defendant. However, because Plaintiff brings suit against Maram solely in his official capacity, the claim against Maram must be treated as a suit against the government entity itself, *see Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). Hamos became Acting Director of the Department in April 2010, and was automatically substituted as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* R. 63 at 1 n.1; R. 93 (Def.'s Stmt. of Facts) ¶ 9.

[2] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Count 5, which is based on the allegations in Count 1, alleges an ongoing violation of the federal Medicaid statutes, 42 U.S.C. § 1396 *et seq.* Wright-Gray can use 42 U.S.C. § 1983 as a vehicle to pursue her claim that Defendant imposes liens on workers' compensation settlements in violation of Medicaid's anti-lien provision, § 1396p. The Medicaid Act does not explicitly preclude private actions. *See generally Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 252 (2009); *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 521 (1990) ("The Medicaid Act contains no . . . provision for private judicial or administrative enforcement" comparable to those in *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19-20 (1981) and *Smith v. Robinson*, 468 U.S. 992, 1012 (1984).); *see also Bertrand v. Maram*, 495 F.3d 452, 456 (7th Cir. 2007) ("§ 1983 allows the enforcement of federal law (such as the Medicaid statute) against state actors (such as the Illinois Department of Health and Family Services)"). Although Hamos

continuing to assert liens that she claims violate federal Medicaid law, 42 U.S.C. § 1396p. Wright-Gray has filed a motion for class certification [R. 57], and the parties also have filed cross-motions for summary judgment [R. 92, 96]. For the reasons discussed below, the Court concludes that the case must be dismissed for lack of Article III jurisdiction because Wright-Gray's claim for injunctive relief is moot (indeed, she never had standing to assert it). To the extent that the Department's summary-judgment motion seeks the jurisdiction-based dismissal, the motion is granted. In light of the dismissal, the formal rulings on the class-certification motion and the summary judgment motions on the merits are that they are denied as moot. But the Court explains, as alternative grounds for entering judgment for the Department, how it would have ruled on those motions.

## I.

In deciding the parties' cross-motions for summary judgment, the Court views the evidence in the light most favorable to the respective non-moving party. Wright-Gray began working for the Cook County Forest Preserve District in 2002. R. 93, Def.'s Stmt. of Facts (DSOF) ¶ 3. In 2005 and 2007, Wright-Gray was injured on the job. *Id.* ¶¶ 7-8. After each injury, Wright-Gray filed a case with the Illinois Workers' Compensation Commission. *Id.* ¶¶ 12-13. As a Medicaid recipient, Wright-Gray received medical care for her work-related injuries from physicians and other providers

---

continues to assert that this Court does not have subject matter jurisdiction, *see* DSOF ¶ 11, this argument was rejected by the district judge previously assigned to the case [R. 45, 52] and this Court agrees there is subject matter jurisdiction over Count 5.

who were enrolled in Medicaid. *Id.* ¶ 21; R. 98, Pl.'s Stmt. of Facts (PSOF) ¶¶ 2-3. These providers billed and received payment from Illinois' Medicaid program, which is administered by the Illinois Department of Healthcare and Family Services. DSOF ¶ 16; PSOF ¶ 2. Through the Medicaid program, the Department paid several of Wright-Gray's medical claims. DSOF ¶ 21.

In December 2005, the Department[3] sent a document titled "Subrogation Notice" to the Forest Preserve, notifying the Forest Preserve that the Department "has become subrogated to Kimberly Wright's right of action to recover medical expenses." *Id.* ¶ 18. This Notice is sent to third-party employers in situations where a Medicaid recipient has filed a workers' compensation claim and the Department has paid medical bills related to the claim. PSOF ¶ 20. The substance of the Subrogation Notice has not changed in over seventeen years. *Id.* ¶ 21. The attachment to the Subrogation Notice states: "The Department is not attempting to place a lien on any settlement the injured person may receive." DSOF ¶ 19. Wright-Gray's workers' compensation attorney, Lawrence Mack, also received a copy of the Department's Subrogation Notice. *Id.* ¶ 20. Indeed, the Department relies on the Medicaid recipient's workers' compensation attorney to inform the Department whether his client's settlement includes medical costs. PSOF ¶ 22. In this case, Mack reviewed Wright-Gray's medical claims to determine which ones paid by Medicaid were related to the work injuries she sustained in 2005 and 2007. DSOF ¶ 25. Between June and December 2008, Mack and the

---

[3]The Illinois Department of Healthcare and Family Services was formerly known as the Illinois Department of Public Aid.

Department communicated about the medical claims Mack had identified as being properly related to Wright-Gray's workers' compensation cases. *Id.* ¶¶ 26-31. Ultimately, the parties agreed that the Department should receive $538.82 for the medical expenses it paid on Wright-Gray's behalf. *Id.* ¶ 31.

Wright-Gray settled both of her workers' compensation cases against the Forest Preserve. *Id.* ¶ 33. In April 2009, pursuant to the settlement agreement, the Forest Preserve issued a check for $8,500 payable to Wright-Gray and her attorney, Mack. *Id.* ¶ 35. The following month Mack sent a letter to the Department; along with the letter was a check, which the letter described as a "check for $538.82 in satisfaction of your disputed subrogation interest in this matter." *Id.* ¶ 38.

Wright-Gray now claims that the Department's subrogation letter was an improper "lien" on her workers' compensation settlement in violation of federal Medicaid law. R. 1 (Compl.) ¶¶ 1-3. She filed the instant putative class action in July 2009. *See id.* Wright-Gray is still employed by the Forest Preserve. DSOF ¶ 5. She has medical insurance through Cook County, but also continues to receive Medicaid. *Id.* ¶¶ 6-7.

Wright-Gray seeks to certify a class of "[a]ll Illinois citizens who have received, or may receive in the future, Medicaid benefits, for medical care or services related to injuries sustained at work, who have received, or may in the future receive, a subrogation lien/notice letter from The Illinois Department of Healthcare and Family Services." R. 58 (Pl.'s Class Cert. Br.) at 2. The Department opposes class certification

in this case [R. 66], and also filed a motion for summary judgment on the merits [R. 82]. Wright-Gray filed a cross-motion for summary judgment. R. 92.

## II.

The threshold question is whether Wright-Gray's claim for injunctive relief is moot. *Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008). The Department argues that it is because her worker's compensation claims were settled, and because she currently has medical insurance. R. 94 (Def.'s Br.) at 2-5. Article III of the Constitution limits the federal courts to adjudicating actual "cases or controversies." U.S. Const. art. III, § 2; *Damasco v. Clearwire Corp.*, 662 F.3d 891, 894 (7th Cir. 2011). Thus, "cases that do not involve actual, ongoing controversies are moot and must be dismissed for lack of jurisdiction." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 490-91 (7th Cir. 2004).

Ensuring that a case is not moot is really a way of ensuring that the requirement of standing is met throughout the litigation. The question of standing focuses "on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed," and is an essential part of the case or controversy requirement of Article III. *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)). Mootness, on the other hand, has been referred to as "a subset of the standing doctrine." *Laskowski v. Spellings*, 546 F.3d 822, 824 (7th Cir. 2008). "Mootness is 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Laskowski*, 546 F.3d at 824 (quoting *Friends of the Earth*, 528 U.S. at

189)). When a party loses standing during the litigation due to intervening events, "the inquiry is . . . one of mootness.'" *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010).

At this stage of the litigation, the Department does not challenge Wright-Gray's standing and instead confines its argument to the issue of mootness. Def.'s Br. at 2-5. The Department argues that this case is moot because even if Wright-Gray prevailed on the merits, her legal rights would not be affected. Wright-Gray responds that her case is not moot because there is a possibility that she will be injured on the job again in the future and receive the same allegedly unlawful Subrogation Notice from the Department. R. 109 (Pl.'s Resp. Br.) at 3. Here, the undisputed facts demonstrate that Wright-Gray's request for injunctive relief in Count 5 – the only claim remaining in this case – is moot as a matter of law.

First, it is undisputed that, before filing this lawsuit, Wright-Gray agreed that the Department had an interest in her right of action to recover medical expenses related to the injuries she sustained at work. Wright-Gray, through her attorney, communicated with the Department about her medical claims, and ultimately agreed to send the Department a check for $538.82 as satisfaction of the Department's disputed subrogation interest. The money was paid, and the check was cashed. Once Wright-Gray voluntarily made the agreed-upon payment to the Department, the alleged "lien" (if there actually was one) against her was extinguished. It is also undisputed that, as of September 13, 2010, Wright-Gray did not have any cases

pending before the Illinois Workers' Compensation Commission. DSOF ¶ 39. And there is no evidence in the record that Wright-Gray has a case pending today.

Wright-Gray fails to demonstrate how enjoining the Department from continuing to disseminate Subrogation Notices to Medicaid recipients would remedy an injury *she* suffers. Such an order would not affect Wright-Gray's legal rights. Indeed, the Court concludes that Wright-Gray did not have standing at the start of this case to pursue the claim for injunctive relief. A plaintiff must demonstrate standing for each claim she seeks to press and for each form of relief that is sought. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Although Wright-Gray's complaint alleges an actual injury that is directly traceable to the Department's alleged unlawful practice of asserting liens on workers' compensation awards, Wright-Gray must also show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 180-81. It is true that Wright-Gray initially sought damages in addition to injunctive relief (to repeat, injunctive relief is the sole remaining claim), but the fact that she had standing to pursue monetary relief does not mean that she had blanket standing to bring the action as a whole.

Of course, at the pleading stage, questions regarding proof of a plaintiff's standing are often premature. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (at pleading stage, "general factual allegations of injury . . . may suffice," but thereafter standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence

required at successive stages of litigation"). However, when asking for injunctive relief, the plaintiff is required to allege a real and immediate threat that the alleged harm will occur. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Here, Wright-Gray's complaint does not contain sufficient facts to confer standing with respect to the injunctive relief requested in Count 5. Although Wright-Gray alleged that the Department had "improperly taken" a portion of her workers' compensation award, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Lyons*, 461 U.S. at 102. In short, granting the requested injunction would not have affected Wright-Gray's rights at the time she filed the complaint and, after discovery and at the summary-judgment stage, this remains true.

Wright-Gray cannot base her claim on her anticipation that she will receive a Subrogation Notice from the Department in the future. As the Department points out, the possibility that Wright-Gray might get injured on the job, file a workers' compensation action, and receive medical treatment from a Medicaid-enrolled provider is speculative. R. 113 (Def.'s Reply) at 4. And Wright-Gray does not have a case pending before the Illinois Workers' Compensation Commission. Rather, her lawsuit is based on the alleged lien placed on the settlement she received for the 2005 and 2007 workers' compensation cases. Wright-Gray settled the dispute over the payment of medical expenses by the Department, forgoing her opportunity to sue and challenge the alleged lien. In addition, Wright-Gray's insurance coverage has changed. Wright-Gray now has primary medical insurance through her employer, the Cook County Forest

Preserve. R. 108-1 (Pl.'s Aff.) ¶¶ 3-4. Her secondary medical insurance is through Medicaid. *Id.* ¶ 5.

The Supreme Court has "repeatedly recognized that what is required for litigation to continue is essentially identical to what is required for litigation to begin: There must be a justiciable case or controversy as required by Article III. 'Simply stated, a case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Friends of the Earth*, 528 U.S. at 721 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). The theoretical possibility that Wright-Gray *might* again receive a Subrogation Notice from the Department is not enough to keep her claim for prospective injunctive relief alive. Nor is her argument that an injunction would redress the complained-of conduct because it would allow her "and all future beneficiaries of healthcare benefits to be assured that Illinois' governmental bodies will follow applicable laws" persuasive. *See* Pl.'s Resp. Br. at 6. Although this case has been litigated for years, resulting in sunk costs to the judicial system (and the parties), courts do not have a license to retain jurisdiction over a case in which one or both of the parties plainly lack an interest. *See Friends of the Earth*, 528 U.S. at 192. For all of these reasons, Wright-Gray does not have an actual stake in the outcome of this lawsuit, and her claim for injunctive relief must be dismissed as moot.

Moreover, Wright-Gray's claim does not meet either of the exceptions to the mootness doctrine: cases involving "voluntary cessation," and cases that are "capable of repetition yet evading review." *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535,

537 (7th Cir. 2005). Although Wright-Gray argues that, unless enjoined by the Court, she will be subject to repeated violations of the law in the event she is injured at work again, she does not appear to be invoking the latter exception to mootness. *See* Pl.'s Resp. Br. at 3. Indeed, the "capable of repetition yet evading review" exception only applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 149 (7th Cir. 2011). Here, it is undisputed that the Department continues to issue Subrogation Notices (so other recipients might bring a suit), and as already discussed, there is not a "reasonable expectation" that Wright-Gray herself will receive a Notice again. The exception does not apply.[4]

Nor does it help that Wright-Gray filed this case as a putative class action. Wright-Gray, the sole named plaintiff, has never had a personal stake in attaining injunctive relief pursuant to Count 5. This is not a situation where the named plaintiff's personal stake evaporated *after* moving for class certification. *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 895-96 (7th Cir. 2011). In *Damasco*, the Seventh Circuit reaffirmed its rule that a complete offer of settlement made prior to the filing

---

[4]In addition, the "capable of repetition, yet evading review" doctrine applies only where a plaintiff had standing when the lawsuit is commenced, and *later* loses standing. As discussed, Wright-Gray never had standing to bring a claim for injunctive relief; therefore, the doctrine is not applicable here. *Friends of the Earth, Inc. v. Laidlaw Environmental Serv.*, 528 U.S. 167, 191 (2000) ("if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum").

for class certification moots a plaintiff's claim. *Id.* (citing *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994)). The court noted that it has "long held that a defendant cannot moot a case by making an offer *after* a plaintiff moves to certify a class, observing that '[o]therwise the defendant could delay the action indefinitely by paying off each class representative in succession.'" *Id.* at 895 (quoting *Primax Recoveries v. Sevilla*, 324 F.3d 544, 546-47 (7th Cir. 2003)).

The "buy-off problem" addressed in *Damasco* is not present here. Wright-Gray's decision to settle her medical expenses dispute with the Department before filing this lawsuit mooted her claim. Thus, her claim for injunctive relief was moot even before she filed her complaint, and well before she filed her motion for class certification.

## III.

Even if the Court is wrong in concluding that there is no Article III jurisdiction over this case, the Court would have denied Plaintiff's motion for class certification and summary judgment motion on the merits, and the Court would have entered summary judgment for the Department. (And if Wright-Gray appeals from the jurisdictional dismissal, explaining these alternative grounds for decision will permit the parties to present all of the disputes to the Seventh Circuit, giving the Court of Appeals the chance to decide, if it so chooses, all of the issues in one appeal if the jurisdictional dismissal turns out to be incorrect.)

Courts usually should decide the question of class certification before turning to the merits of a given action. *See Weismueller v. Kosobucki*, 513 F.3d 784, 786-87 (7th Cir. 2008). Here, Wright-Gray argues that a class action would be the best way to

resolve the dispute in this case. The Department responds that Wright-Gray's motion for certification must be denied because Wright-Gray cannot meet the requirements of Federal Rule of Civil Procedure 23.

"To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner v. Northshore Univ. HealthSystem*, – F.3d –, 2012 WL 129991, at *4 (7th Cir. Jan. 13, 2012). First, under Rule 23(a), the party seeking certification must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b). Wright-Gray relies on Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." *See* R. 131 (Pl.'s Resp. to Def.'s Supp. Br.) at 2.

"A class may be certified only if 'the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 916 (7th Cir. 2011) (emphasis added by *Creative Montessori*) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). The named plaintiff bears the burden of showing that each requirement is satisfied. *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.

1993). The Court "must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo v. Bridgeport Machs.*, 249 F.3d 672, 676 (7th Cir. 2001)); *see also Dukes*, 131 S. Ct. at 2551 (class certification analysis "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim"). The Court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Chavez v. Ill. State Police*, 251 F.3d 612, 619 (7th Cir. 2001).

Wright-Gray moves the Court to certify a class of "[a]ll Illinois citizens who have received, or may receive in the future, Medicaid benefits, for medical care or services related to injuries sustained at work, who have received, or may in the future receive, a subrogation lien/notice letter from The Illinois Department of Healthcare and Family Services."[5] R. 58 (Pl.'s Class Cert. Br.) at 2. In support of her motion, Wright-Gray states that "the proposed Class members' claims relate to [the Department's] standard practice of asserting a lien on every worker's compensation settlement and award

---

[5]To conform with the rulings of the previously-assigned judge, this definition differs from the class Wright-Gray proposed in her complaint. Specifically, in her complaint, Wright-Gray sought certification of "Illinois citizens who have received Medicaid and who had liens asserted and/or moneys taken by Defendants out of their third-party workers' compensation settlements from July 22, 2004, where said settlements were unrelated to medical care and services, or where the liens asserted and or monies taken by Defendants were in excess of the amount of said settlement related to medical care and services in violation of 42 U.S.C. Section 1396p(a)(1)." R. 1 ¶ 11. After the previously-assigned judge granted the Department's motion to dismiss four out of the five claims, leaving only the injunctive relief claim, Wright-Gray revised the class definition "in order to reflect that the injunctive relief count is the only remaining count in this action." R. 72 (Pl.'s Reply Br.) at 12.

received by persons who filed a worker's compensation claim and had their medical bills relating to the claim paid by [the Department] through public aid payments, regardless of whether a settlement or award represented payment for medical care, disability or permanent injury." R. 131 at 1-2. Wright-Gray claims that the Department's "standard practice violates federal law, which prohibits states from asserting liens on any amount of a worker's compensation settlement or award that does not represent payment for medical care." R. 131 at 2. In Count 5, Wright-Gray contends that the Department should be enjoined from asserting such liens. Thus, she argues that the issue (and answer) for every member of the class will be the same – does it violate federal law for the Department to send Subrogation Notices to all Medicaid recipients who have workers' compensation claims, regardless of whether the settlement includes compensation for medical expenses? R. 57 (Pl.'s Motion for Class Certification) ¶ 6.

## A.

Before addressing the specific requirements of Rule 23, the Department argues that Wright-Gray's motion must be denied because the proposed class definition is not sufficiently definite to warrant class certification. In addition to the Rule 23 requirements, "[t]he plaintiff must also show . . . that the class is indeed identifiable as a class." *Oshana v. Coca-Cola*, 472 F.3d 506, 513 (7th Cir. 2006) (citing *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)) (class definitions must be definite enough that the class can be ascertained). Because "the outcome of a class action suit is res judicata as to all unnamed class members, it is crucial to have a clear

definition of what groups or individuals are members of the class." *Alliance to End Repression*, 565 F.2d at 977 n.6. The Court agrees with the Department that there are problems with the proposed class definition in this case.

First, it will be difficult to definitively ascertain, with objective precision, which Medicaid recipients received Medicaid benefits (paid by the Department) for medical services "related to injuries sustained at work." The Department only sends Subrogation Notices to Medicaid recipients when it believes that the medical services paid by the Department are related to a claim the Medicaid recipient filed with the Illinois Workers' Compensation Commission. DSOF ¶ 17. In order to determine whether "related" services were likely paid, a Department recovery consultant first references either (1) a monthly document that "cross-matches" the Department's Medicaid recipient database with the Commission's records, or (2) letters sent to the Department by hospitals or attorneys indicating that the Department may have paid some of the Medicaid recipient's medical bills related to a workers' compensation claim. R. 66-1, Def.'s Exh. C (Thornton Dep.) at 36-37, 40. From there, the Department consultant visits the Commission's website to see if the workers' compensation case has been settled. *Id*. at 41. If the case is still pending, the consultant then makes another inquiry into whether the Department paid any medical bills "related to [the recipient's] claim." *Id*. If the consultant determines that the Department did not pay anything related to the claim, he will not send out the Subrogation Notice. *Id*. at 42. However, if the Department *has* paid medical bills that appear to be related to the workplace

injury, it sends a Notice to the Medicaid recipient, her employer, and any attorney of record. *Id.*

The Department argues that this "process of determining, at the outset, what paid Medicaid claims are 'related' to the pending workers compensation claim is a matter for Defendant's judgment" and, thus, the Court would have to engage in an individualized, factual review of the Department's paid Medicaid claims to determine if they were "related to injuries sustained at work," thereby making the Medicaid recipient part of the class (assuming the recipient also received a Subrogation Notice). R. 66 at 9-10. Wright-Gray does not respond to this argument in her reply brief. She does not propose a method for ascertaining class membership via a "ministerial review" of available records. *See Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 370 (N.D. Ill. 2008) (proposed class is sufficiently identifiable only if the information necessary to identify members is available through a "ministerial review" rather than "arduous individual inquiry"). Nor does she explain how class membership can be ascertained by reference to objective criteria. *See Wallace v. Chicago Hous. Auth.*, 224 F.R.D. 420, 425 (N.D. Ill. 2004) (citing *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987)).

The Department has put forth evidence showing that its recovery consultants review each Medicaid recipient's file separately to determine (1) which services are potentially related to the recipient's worker's compensation action, and (2) whether the Department paid for any of those related services. The facts of this case show that it is not always clear which medical services are "related" to the injury sustained at work.

Here, Wright-Gray's attorney, Lawrence Mack, also reviewed Wright-Gray's medical file to determine which claims he believed were related to Wright-Gray's work-related injury. Mack and the Department exchanged phone calls and emails about which claims should be considered "related" and ultimately settled on an amount that was different from the services the Department initially claimed. R. 93-1, Def.'s Exh. G (Mack Dep.) at 66-67. So the proposed class is not objectively identifiable, but instead requires exercises in judgment and probably back-and-forth negotiations, thus showing that Wright-Gray's proposed class definition is inadequate because it requires individualized fact-finding and depends on subjective criteria.[6]

## B.

Even if the proposed class were definite and ascertainable, Wright-Gray fails to meet all of the requirements under Rule 23(a). Specifically, Wright-Gray has not met the commonality or typicality requirements.

### 1. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To establish commonality, the class representative must demonstrate that members of the class "have suffered the same injury." *Dukes*, 131 S. Ct. at 2556. Commonality requires that all of the class members' claims "depend upon a common

---

[6]The Department makes other arguments against the proposed class definition, but they are not persuasive and will not be addressed at length. For instance, the Department argues that the Department has no way of knowing who actually *received* a Notice of Subrogation, but this does not defeat certification because the Department could identify to whom the Notices were *sent*, and that is a sufficient objective proxy of receipt.

contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. In *Dukes*, the Supreme Court concluded that what is most relevant to class certification "is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 2551 (citation omitted).

Here, Wright-Gray fails to demonstrate that there are questions of law and fact common to the class. Her remaining claim alleges that Hamos, in her official capacity, violates federal law by "wrongfully asserting liens and receiving recovery in worker's compensation cases when no medical costs are part of the [Medicaid recipients'] settlements." R. 1 ¶ 35. Wright-Gray points to certain issues of law that proposed class members share in common, such as for example, whether the Subrogation Notice used by the Department constitutes a "lien" under federal Medicaid law. *See* R. 58 at 9. But the crux of this case is whether the Department asserts the alleged "liens" against workers' compensation awards that do not represent medical expenses. Indeed, Wright-Gray's motion for class certification states that she brought this class action lawsuit based on liens asserted by the Department "upon Illinois residents' worker's compensation settlements that did not include compensation for medical care or services, or in excess of the amount of said settlement related to medical care and services." R. 57 ¶ 1. This contention is not capable of classwide resolution.

Wright-Gray argues that all class members' claims relate to the Department's "standard practice" of issuing a Subrogation Notice (or, according to her, a "lien") on every workers' compensation settlement and award, regardless of whether a settlement or award represented compensation for medical expenses. R. 131 at 3. But she fails to put forth any evidence of the Department's alleged "standard practice" or policy to send out a Notice to every single workers'-compensation benefits recipient. Rather, there is evidence in the record showing that Notices are sometimes sent out after a Medicaid recipient's attorney contacts the Department about a particular workers' compensation action. Other times, the Notice is sent after a recovery consultant makes a determination, based on the consultant's review of the medical file, that the Department paid for medical services that might be related to the workers' compensation action. As discussed, it depends on the facts of a particular case, whether the Department paid for services that it deemed to be "related" to the injuries the Medicaid recipient sustained at work. The relevant facts for each member will vary widely. Thus, Wright-Gray fails to satisfy the commonality requirement of Rule 23(a).

### 2. Typicality

The typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police*, 7 F.3d at 596–97. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De la Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)

(internal quotation omitted). The typicality requirement is closely related to the commonality requirement under Rule 23(a)(2). *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Even if Wright-Gray had standing to bring this action, her claim would not be typical of those of the class. Wright-Gray's proposed class includes people who, like her, agreed to provide the Department with payment for medical expenses recovered from their settlements. But the class also includes people who received the Subrogation Notice, ignored it, and never paid the Department a single dime from their workers' compensation settlement. These members cannot allege the sort of injury that Wright-Gray herself alleges. Wright-Gray fails to satisfy the typicality requirement.

Because Wright-Gray has failed to meet the requirements of Rule 23(a)(2) and (a)(3), the Court need not address the numerosity or adequacy requirements, or whether "final injunctive relief . . . is appropriate respecting the class as a whole" under Rule 23(b)(2). If the jurisdictional dismissal is incorrect, the Court would have denied Wright-Gray's motion for class certification.

## IV.

Finally, the Court turns to the merits of Wright-Gray's claim, again as an alternative ground for decision and for the benefit of considering or litigating a potential appeal. The parties filed cross-motions for summary judgment on the merits. R. 92, 96. Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The same standard applies to cross-motions for

summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

The Medicaid program, established under Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*, is a joint federal-and-state-funded program that provides medical assistance to individuals whose income and financial resources are insufficient to pay the cost of necessary medical services. *See Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006). States are not required to participate in the Medicaid program, but if a state elects to participate, it must comply with federal statutes and regulations. *See* 42 U.S.C. § 1396a(a)(10). If a state establishes a Medicaid plan that meets federal requirements, *see* 42 U.S.C. § 1396a, the federal government reimburses a state's medical assistance costs by paying a Federal Medical Assistance Percentage. *See* 42 U.S.C. § 1396b(a)(1); *Ahlborn*, 547 U.S. at 275 (noting that the federal government pays between 50% and 83% of the costs the State incurs for patient care).

Illinois participates in the federal Medicaid program. 305 ILCS 5/5-1 *et seq.* The Illinois Department of Healthcare and Family Services is the agency responsible for

administering Illinois' Medicaid program, known as the Illinois Medical Assistance Program. PSOF ¶ 2. As a condition of receiving federal Medicaid funding, states must include a provision in their Medicaid plans for recouping funds expended on behalf of Medicaid recipients from liable third parties. 42 U.S.C. § 1396a(a)(25)(A); *Ahlborn*, 547 U.S. at 275-76. If third-party liability is found after the state has provided medical services to a beneficiary and "the amount of reimbursement the [s]tate can reasonably expect to recover exceeds the costs of such recovery," the state is required to "seek reimbursement . . . to the extent of such legal liability." 42 U.S.C. § 1396(a)(25)(B). To this end, states must require, as a condition of participation in Medicaid, participants to sign over their rights to seek and collect payment for medical care from a responsible third party to the state. 42 U.S.C. § 1396k(a)(1)(A); 42 U.S.C. § 1396a(a)(25)(H) ("to the extent that payment has been made under the [s]tate plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the [s]tate has in effect laws under which, to the extent that payment has been made under the [s]tate plan for medical assistance for health care items or services furnished to an individual, the [s]tate is considered to have acquired the rights of such individual to payment by any other party for such health care items or services"); *see also* 42 C.F.R. §§ 433.137-433.154. Thus, once a person chooses to participate in Medicaid, the state uses this right to support pursuing responsible third parties for reimbursement.

To this end, Illinois' Medicaid statutes include a subrogation provision, 305 ILCS 5/11-22a, which provides:

> To the extent of the amount of . . . medical assistance provided by the Department [of Healthcare and Family Services] to or on behalf of a [Medicaid] recipient . . . the Department shall be subrogated to any right of recovery such recipient may have under the terms of any private or public health care coverage or casualty coverage, including coverage under the "Workers' Compensation Act," . . . without the necessity of assignment of claim or other authorization to secure the right of recovery to the Department.

305 ILCS 5/11-22a. In December 2005, after Wright-Gray filed her first workers' compensation claim against the Cook County Forest Preserve, the Department sent a Notice of Subrogation to the Forest Preserve, notifying it that, pursuant to 305 ILCS 5/11-22a, the Department "has become subrogated to [Wright-Gray's] right of action to recover medical expenses paid on [her] behalf." DSOF ¶ 18; R. 98-1 (Def.'s Exh. A). The Attachment to the Subrogation Notice states that the Department "is not attempting to place a lien on any settlement the injured person may receive." DSOF ¶ 19. Lawrence Mack, the attorney who represented Wright-Gray in her workers' compensation cases, also received a copy of the Subrogation Notice and Attachment. *Id.* ¶ 20.

Wright-Gray argues that although the Department cites the subrogation provision and titles the document as a "Subrogation Notice," the document actually imposed a "lien" on the entire amount of her workers' compensation settlement. R. 109 at 7-9. Wright-Gray argues that this type of "lien" is exactly what the Supreme Court held was improper under federal Medicaid laws in *Arkansas Department of Health & Human Services v. Ahlborn*, 547 U.S. 268 (2006). In *Ahlborn*, the Supreme Court held that states could not recover the full amount of their payments for medical expenses to Medicaid recipients. *Id.* at 281. Rather, the Court held that a state may only recover

23

that portion of the settlement or judgment that is attributable to repayment of medical services. *Id.* at 281, 285. The assignment provisions of federal Medicaid law only provide for a limited assignment from the recipient to the state for payment for medical items and services from a liable third party. *Id.* at 278-82. The Court then concluded that any state statute providing for a greater assignment would be inconsistent with the Medicaid "anti-lien" statute, 42 U.S.C. § 1396p, which prohibits states from placing liens against or seeking recovery benefits from a Medicaid beneficiary before her death. *Id.* at 282-286. According to the Court, while the assignment provisions create an exception to the anti-lien statute for recovery of payments that constitute reimbursement for medical costs paid by Medicaid, any recovery by the state of settlement funds intended to reimburse the Medicaid beneficiary for pain and suffering, lost wages, or other non-medical damages would constitute an impermissible lien on the beneficiary's property. *Id.*

The Subrogation Notice used by the Department does not run afoul of the Supreme Court's holding in *Ahlborn*, nor did it impose a "lien" on Wright-Gray's workers' compensation settlement. Under federal and state law, the Department has a right to pursue recovery of funds it paid on Wright-Gray's behalf. The Subrogation Notice informed her employer and workers' compensation attorney of the Department's right, and Wright-Gray fails to demonstrate that the Notice has any other legal or binding effect on her workers' compensation settlement. In fact, it is undisputed that the Department only recovers funds out of a workers' compensation award when an insurance company or attorney for the claimant in the workers' compensation case

reports that payment for related medical expenses will be part of the workers' compensation award. DSOF ¶ 22. In fact, in some cases, the insurer or attorney completely disregards the Notice, and there are no adverse consequences to the claimant. *Id.* ¶ 24. In Wright-Gray's case, her attorney contacted the Department and communicated with an the Department representative about which of Wright-Gray's medical claims paid by the Department were claims related to her workers' compensation action. *Id.* ¶¶ 25-26. The parties ultimately agreed that $538.82 was the amount that the Department should be reimbursed for medical expenses pursuant to its right of subrogation under 305 ILCS 5/11-22a. *Id.* ¶¶ 31, 38. Through her attorney, Wright-Gray agreed that the Department was entitled to recover the medical payments it made on her behalf, and her attorney reviewed the medical claims to ensure that the reimbursement was limited accordingly. Wright-Gray's attempts to characterize the Notice and ensuing negotiation process as the assertion of a "lien" are unavailing.

Accordingly, even if Wright-Gray's claim was not moot, her motion for summary judgment [R. 96] would be denied, and the Department's motion [R. 92] would be granted.

## V.

For the reasons stated above, the Department's motion for summary judgment [R. 92] is granted in part. Wright-Gray's motions for class certification [R. 57] and summary judgment [R. 96] are denied as moot.

ENTERED:

_____
Honorable Edmond E. Chang

Date: February 2, 2012